JILL PRYOR, Circuit Judge,
joined by WILSON, MARTIN, JORDAN, and ROSENBAUM, Circuit Judges,
dissenting:
The question before the en banc Court today is whether a federal habeas court should look through a state appellate court’s summary decision denying a petitioner relief to the reasoning in a lower state court decision when deciding whether the state appellate court’s decision is entitled to deference under 28 U.S.C. § 2254(d). “Looking through” means that the federal habeas court presumes that when a state appellate court issues a summary decision, it has implicitly adopted the reasons given in a lower state court’s decision for denying the petitioner’s claims, absent strong evidence to rebut the presumption. The federal court then reviews the lower court’s reasoning when deciding whether the state appellate court’s decision is entitled to deference. By rejecting a look-through presumption, the majority places a far heavier burden on habeas petitioners than the Antiterrorism and Effective Death Penalty Act of 1996 (“AED-PA”) requires. I reject the majority’s position because (1) Supreme Court precedent indicates we should look through and (2) the majority opinion runs roughshod over the principles of federalism and comity that underlie federal collateral review of state court decisions.
First, although the United States Supreme Court has not explicitly held that federal habeas courts must look through a summary state appellate court decision to a lower court’s reasoning when deciding whether the state appellate court’s summary decision is entitled to deference under § 2254(d), the Supreme Court’s decisions nonetheless support looking through. The Supreme Court first adopted a look-through presumption in Ylst v. Nunnemaker, 501 U.S. 797, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991), holding that a federal habeas court should look through a summary state appellate court decision to the last reasoned state court decision to determine whether the summary decision rested on a state law procedural default. The Supreme Court’s justification for the presumption — that the state appellate court’s summary decision indicated “agree[ment] ... with the reasons given below” for rejecting the petitioner’s claim — suggests a look-through presumption should be broadly applied. Id. at 804, 111 S.Ct. 2590. But I acknowledge that in Ylst the Court did not consider whether a federal habeas court should treat a state appellate court’s *1248 summary decision as adopting the lower court’s reasons for rejecting the petitioner’s claims on the merits.
Subsequently, in Harrington v. Richter, 562 U.S. 86, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011), the Supreme Court addressed federal court review of a summary state appellate court’s denial of collateral relief that was the only state habeas decision. The Supreme Court held that the federal court should defer to the summary decision “unless there was no reasonable basis for the state court to deny relief.” Id. at 98, 131 S.Ct. 770. The majority contends that Richter controls how federal habeas courts should review all state appellate court summary decisions, but in Richter there was no reasoned decision from a lower court to look through to; thus, Richter did not address whether federal habeas courts should look through.
Although neither Ylst nor Richter addressed the exact issue before us today, in a companion case to Richter, Premo v. Moore, 562 U.S. 115, 131 S.Ct. 733, 178 L.Ed.2d 649 (2011), the Supreme Court implicitly looked through an Oregon Court of Appeals summary decision affirming the denial of relief to the state habeas trial court’s opinion to determine whether the summary decision was entitled to deference under § 2254(d). Although the Supreme Court in Moore did not expressly state that it was looking through, we should follow what the Supreme Court actually did in Moore — and look through here. And the Supreme Court has given us other signals indicating that we should look through that the majority largely ignores. The majority’s extension of Richter also creates a circuit split, as it directly contravenes the decisions of at least two other circuits.
Second, the majority opinion tramples on the principles of federalism and comity that underlie federal collateral review. By rejecting a look-through presumption, the majority opinion treats the reasoned opinion of a Georgia superior court as a nullity merely because the Georgia Supreme Court subsequently rendered a summary decision. Although the Georgia Supreme Court has never explicitly stated that its summary decisions indicate agreement with the superior court’s reasoning, there are good reasons to conclude that the Georgia Supreme Court’s silence indicates agreement with and adoption of the lower court’s reasoning. This inference is supported by the way in which Georgia has structured its habeas system to require a superior court to render a reasoned decision denying relief only after discovery and an evidentiary hearing while allowing the Georgia Supreme Court to issue a summary decision denying review; the Georgia Supreme Court’s practice of issuing a reasoned decision denying an application for a certificate of probable cause when it disagrees with the superior court’s reasoning; and the Georgia Supreme Court’s continued use of summary decisions despite knowing that the United States Supreme Court on direct review treats its silence as indicating agreement with and adoption of the superior court’s reasoning. By requiring federal habeas courts to ignore this evidence about what the Georgia Supreme Court intended its summary decision to mean, the majority opinion violates the principles of federalism and comity that serve as the foundation for deference to state court proceedings under § 2254(d).
I am not alone in rejecting the majority’s position. Two United States Supreme Court justices recently told us that we should use this en banc case as an “opportunity to correct [our] error” in failing to apply a look-through presumption. Hittson v. Chatman, — U.S.-, 135 S.Ct. 2126, 2128, 192 L.Ed.2d 887 (2015) (Ginsburg, J., concurring in the denial of certiorari where looking through would not entitle the petitioner to relief). Justice Ginsburg, joined *1249 by Justice Kagan, wrote that we had “plainly erred” and should instead “ ‘look through’ [the Georgia Supreme Court’s summary] adjudications ... to determine the particular reasons why the state court rejected the claim on the merits.” Id. Although the opinion of two justices of course does not bind us, it nevertheless should give us pause about whether the majority has correctly interpreted Ylst, Richter, and Moore or correctly applied the core principles of federalism and comity undergirding federal habeas review under § 2254(d).
I. BACKGROUND
The question of whether we should adopt a look-through presumption arises in the context of our review of Georgia death row inmate Marion Wilson’s federal habe-as petition. Mr. Wilson was convicted of malice murder and sentenced to death. The Georgia Supreme Court affirmed the conviction and sentence. Mr. Wilson petitioned the Superior Court of Butts County, Georgia for collateral relief, arguing among other points that his trial counsel provided ineffective assistance by failing to investigate mitigation evidence at the penalty phase. After discovery and a two-day evidentiary hearing, the superior court denied Mr. Wilson’s petition in a lengthy written order, determining that some of his claims were procedurally defaulted under Georgia law and others failed on the merits. With respect to the ineffective assistance of counsel claim based on counsel’s failure to investigate mitigation evidence, the superior court explained that the claim failed for two reasons: counsel’s performance was not deficient and Mr. Wilson had not demonstrated prejudice. Mr. Wilson applied for a certificate of probable cause to appeal to the Georgia Supreme Court, which denied his application in a one-sentence summary order. He then sought review in the United States Supreme Court, which denied his petition for certiorari.
Mr. Wilson then petitioned for a writ of habeas corpus in federal court based on ineffective assistance of counsel. The district court denied his petition, concluding that the state court’s adjudication was entitled to deference under 28 U.S.C. § 2254(d). In deciding whether to defer to the state court’s adjudication of Mr. Wilson’s claim, the district court looked through the Georgia Supreme Court’s summary denial of the application for a certificate of probable cause to the superi- or court’s reasoning. The district court acknowledged that “the conduct of Wilson’s trial attorneys with regard to their investigation and presentation of mitigation evidence is difficult to defend.” Order at 1 (Doc. 51).[1] But it denied relief because even if the superior court unreasonably determined that trial counsel’s performance was not deficient, the superior court’s determination that Mr. Wilson could not establish prejudice was entitled to deference.
Mr. Wilson appealed. After correctly determining that the Georgia Supreme Court summary decision was the relevant state court decision for review, a panel of this court held that it was not required to review the reasoned opinion of the superi- or court and instead framed the issue as “whether there was any reasonable basis for the [Georgia Supreme Court] to deny *1250 relief.” Wilson v. Warden, Ga. Diagnostic Prison, 774 F.3d 671, 678 (11th Cir. 2014) (alteration in original) (internal quotation marks omitted), reh’g en banc granted, op. vacated, No. 14-10681 (11th Cir. July 30, 2015). We vacated the panel opinion to review en banc whether we should look through to the superior court’s reasoning when deciding whether the Georgia Supreme Court’s summary decision is entitled to AEDPA deference. Although only Mr. Wilson’s case is presently before us, our resolution of this issue will effect numerous other habeas petitioners in Georgia, including many death row inmates.[2]
II. ANALYSIS
Section 2254(d) governs when a federal habeas court must defer to a state court’s adjudication of a habeas claim. This provision forbids a federal court from granting an application for a writ of habeas corpus “with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim” in the state court “resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or ... resulted in a decision that was based on an unreasonable determination of the facts.” 28 U.S.C. § 2254(d); see Parker v. Sec’y for Dep’t of Corr., 331 F.3d 764, 775-76 (11th Cir. 2003) (describing § 2254(d) as requiring federal courts to give deference to state court decisions).
Although § 2254(d) does not identify the state court decision to which we defer when multiple state courts have reviewed the petitioner’s claim, the Supreme Court has explained that under § 2254(d) a federal habeas court reviews only one deeision: “the last state-court adjudication on the merits.” Greene v. Fisher, — U.S. -, 132 S.Ct. 38, 45, 181 L.Ed.2d 336 (2011). The majority and I agree that here the last state court decision on the merits is the Georgia Supreme Court’s denial of Mr. Wilson’s application for a certificate of probable cause. See Foster v. Chatman, -U.S.-, 136 S.Ct. 1737, 1746 n.2, 195 L.Ed.2d 1 (2016). Accordingly, we agree that to pierce AEDPA deference Mr. Wilson must show that the Georgia Supreme Court’s decision was contrary to, or an unreasonable application of, clearly established federal law or based on an unreasonable determination of the facts. The majority opinion and I part ways, however, when it comes to the approach a federal habeas court should take in applying § 2254(d)’s standard to the Georgia Supreme Court’s summary decision.
I believe that we should presume the Georgia Supreme Court adopted the superior court’s reasoning and in effect review whether the superior court’s application of federal law and determination of the facts are entitled to deference. To address why, I begin by explaining that a federal habeas court’s application of § 2254(d)’s standard depends upon whether the state court rendered a reasoned decision. I then discuss why the federal habeas court should presume that when the Georgia Supreme Court summarily denies an application for a certificate of probable cause, it implicitly adopted the superior court’s reasoning. Because this presumption allows the federal court to attribute reasoning to the Georgia Supreme Court’s decision, I would have the federal court review whether the reasoning in the Georgia superior court’s decision — which the Georgia Supreme Court implicitly adopted in its summary *1251 decision — is entitled to deference under § 2254(d).
A. The Nature of Federal Review under § 2254(d) of State Court Decisions
I begin with the nature of a federal court’s review of a state court decision under § 2254(d). More specifically, when must a federal court review the actual reasoning set forth in a state court decision and when must the court instead hypothesize possible reasons that could have supported the state court decision? In analyzing deference to a state court decision under § 2254(d), the Supreme Court has applied two distinct modes of analysis. The first mode applies when there is a reasoned decision from the state court. I refer to this as the “reasoned-decision” approach. In these cases, a federal habeas court reviews the reasoning set forth in the state court decision and then determines whether that reasoning is entitled to deference. The second mode applies when there is no reasoned state court decision. I refer to this as the “unexplained-decision” approach. In such cases, the federal habe-as court may conjure up hypothetical arguments or theories that could have supported the result the state court reached and then reviews whether those arguments or theories are entitled to deference.
1. The Reasoned-Decision Approach
Under the reasoned-decision approach, in considering whether to defer to a state court decision under § 2254(d), a federal habeas court reviews the reasoning in the state court decision, not the result the state court reached. The Supreme Court applied this approach when it pierced AEDPA deference in Wiggins v. Smith. 539 U.S. 510, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003).
In Wiggins, the petitioner, who was sentenced to death, argued that his trial counsel rendered ineffective assistance by failing to investigate his background or present mitigating evidence at his sentencing. Id. at 514, 123 S.Ct. 2527. In state habeas proceedings, the Maryland Court of Appeals rejected the ineffective assistance claim, reasoning that because the defense attorneys had some information about the petitioner’s background, they made a tactical choice not to present a mitigation defense. Id. at 527, 123 S.Ct. 2527. The United States Supreme Court pierced AEDPA deference because the state court’s application of legal principles was unreasonable, in that the Maryland Court of Appeals failed to consider whether the petitioner’s counsel should have investigated further. See id. (“In assessing the reasonableness of an attorney’s investigation, ... a court must consider not only the quantum of evidence already known to counsel, but also whether the known evidence would lead a reasonable attorney to investigate further.”). Importantly, the Supreme Court never considered hypothetical arguments or theories that could have supported the Maryland Court of Appeals’s decision to deny relief, because for purposes of piercing AEDPA deference it was sufficient that the reasoning of that decision unreasonably applied clearly established federal law. Id. at 534, 123 S.Ct. 2527.[3]
*1252 Significantly, if the petitioner demonstrates that the state trial court’s reasoning was contrary to or an unreasonable application of clearly established federal law or based on an unreasonable determination of fact, he has pierced AEDPA deference and is entitled to de novo review from the federal habeas court. See Panetti v. Quarterman, 551 U.S. 930, 954, 127 S.Ct. 2842, 168 L.Ed.2d 662 (2007) (holding that state habeas court decision was not entitled to deference under § 2254(d) and then “considering] petitioner’s claim on the merits”). As a result, the district court considering his habeas claim “is no longer bound by § 2254(d) or limited to consideration of the facts developed in the state court record.” Daniel v. Comm’r, Ala. Dep’t of Corr., 822 F.3d 1248, 1280 (11th Cir. 2016).
2. The Unexplained-Decision Approach
The Supreme Court recognized an exception to the reasoned-decision approach that allows a federal habeas court to consider hypothetical arguments or theories that could have supported the state court decision when the state court does not explain its reasons for denying relief— what I am calling the unexplained-decision approach. When federal habeas courts apply the unexplained-decision approach, they in effect review whether the result reached by the state court is entitled to deference. See Richter, 562 U.S. at 98, 131 S.Ct. 770. A chronology of Supreme Court decisions illustrates that the unexplained-decision approach was intended to be a narrow exception that applies only when no state court has provided reasons for rejecting the petitioner’s claims.
In Richter, the Supreme Court first adopted the unexplained-decision approach when confronted with how to apply AED-PA’s deferential standard to a California Supreme Court summary decision that was the only state court decision to address the petitioner’s claim. In Richter, the petitioner sought habeas relief on his ineffective assistance of counsel claim in the first instance in the California Supreme Court, as permitted under California procedure.[4] The California Supreme Court denied his petition in a one-sentence order. Id. at 96, 131 S.Ct. 770. The petitioner then sought federal habeas relief. The Ninth Circuit concluded that the California Supreme Court’s decision was not entitled to deference because its decision denying relief was unreasonable. Id. at 97, 131 S.Ct. 770. The United States Supreme Court reversed, concluding that the California Supreme Court’s summary decision was entitled to deference under § 2254(d). Id. at 113,131 S.Ct. 770.
The United States Supreme Court faced the dilemma of how a federal habeas court should review the California Supreme Court’s summary decision under § 2254(d). Although the petitioner argued that the summary decision was not on the merits, which would make § 2254(d) inapplicable, *1253 the United States Supreme Court rejected this argument. Id. at 98-99, 131 S.Ct. 770. And because there was no state court decision explaining why the petitioner’s claim failed, it was impossible for a federal habe-as court to apply the reasoned-decision approach. The Supreme Court resolved this problem by announcing a new approach to applying § 2254(d)’s standard. The Supreme Court recognized that in some cases federal habeas courts review the state habeas court’s reasoning and in others the result:
Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court’s decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court.
Id. at 102, 131 S.Ct. 770. Because the California Supreme Court’s decision was unaccompanied by an explanation, the federal habeas court could consider arguments or theories that “could have supported the state court decision.” Id. The petitioner then had to show that “there was no reasonable basis for the state court to deny relief.” Id. at 98, 131 S.Ct. 770. In effect, the petitioner had to show that the result reached by the California Supreme Court was unreasonable. And in deciding whether the result — that is, the denial of relief — -was unreasonable, the federal ha-beas court could consider only the record that was before the state appellate court. Cullen v. Pinholster, 563 U.S. 170, 180-81, 131 S.Ct. 1388, 179 L.Ed.2d 557 (2011).
After Richter, circuits were split about the proper mode for federal habeas courts to use when the last state court decision was accompanied by an explanation, with some circuits treating Richter as requiring federal habeas courts to review only the result reached by a state court even when the state court decision was accompanied by an explanation.[5] Compare Green v. Thaler, 699 F.3d 404, 414 (5th Cir. 2012) (explaining that federal habeas courts “review the state court’s actual decision, not the written opinion on which it is based”), with Woolley v. Rednour, 702 F.3d 411, 422 (7th Cir. 2012) (concluding that Richter’s unexplained-decision approach applies only when “a state court decision is unaccompanied by an explanation” (internal quotation marks omitted)), and Rayner v. Mills, 685 F.3d 631, 637-38 (6th Cir. 2012) (same). Then, in Brumfield v. Cain, — U.S.-, 135 S.Ct. 2269, 192 L.Ed.2d 356 (2015), the Supreme Court clarified that under § 2254(d) federal habeas courts must apply the reasoned-decision approach whenever a state court decision is explained, meaning that federal courts should consider hypothetical arguments or theories only when there was no reasoned state court decision at all.
In Brumfield, the Supreme Court pierced AEDPA deference because the Louisiana state trial court’s denial of an evidentiary hearing on the petitioner’s claim that he could not be executed on account of his intellectual disability was based on unreasonable factual determinations. Id. at 2274. The state of Louisiana argued that even if the state habeas court had made unreasonable determinations of fact, its decision was entitled to deference under § 2254(d) because the result was reasonable given the petitioner’s failure to present evidence that his intellectual dis *1254 ability manifested before he reached adulthood. Id. at 2282. Put another way, Louisiana argued that the Supreme Court should defer to a hypothetical justification for the denial of relief, even though the state ha-beas court had issued a reasoned decision.
The Supreme Court rejected Louisiana’s position, explaining that because “the state trial court never made any finding that [the petitioner] had failed to produce evidence suggesting he could meet this age-of-onset requirement,” there was “no determination on that point to which a federal court must defer in assessing whether [the petitioner] satisfied § 2254(d).” Id. Distinguishing Richter, the Supreme Court explained that federal habeas courts must defer to “hypothetical reasons [the] state court might have given for rejecting [the] federal claim” only when there is “no ‘opinion explaining the reasons relief has been denied.’ ” Id. at 2282-83 (quoting Richter, 562 U.S. at 98, 131 S.Ct. 770).[6]
In many cases, it is clear whether the reasoned-decision or unexplained-decision approach should apply. When the last state court decision on the merits explains why the petitioner is not entitled to relief, the Supreme Court has applied the reasoned-decision approach when considering whether to defer to the state court decision under § 2254(d). Conversely, when no state court has issued a reasoned decision, the Supreme Court has told us that the federal habeas courts should use the unexplained-decision approach. This case requires us to consider a more difficult question: how should a federal habeas court treat a state appellate court’s unexplained summary decision when a lower state court has rendered a reasoned decision?
B. Looking Through a Summary State Appellate Court Decision When a Lower Court Has Rendered a Reasoned Decision
I would adopt a look-through rule and presume that when a state appellate court renders a summary decision after a lower state court issued a reasoned decision, the state appellate court adopted the lower court’s reasoning. To be clear, with a look-through presumption, the federal habeas court still would review the last state court decision on the merits — the summary decision. The presumption simply provides a way of identifying the arguments or theories on which the state appellate court relied in its summary decision for the purpose of affording deference under §.2254(d). Because the presumption permits reasoning to be attributed to the Georgia Supreme Court’s decision, I would have a federal habeas court use the reasoned-decision approach, to review the Georgia Supreme Court’s decision.[7] As I explain below, adopting a look-through ap *1255 proach is appropriate for two reasons: (1) it is more consistent with the Supreme Court’s leading decisions, and (2) it best gives effect to the principles of federalism and comity that undergird § 2254(d).
1. The Leading Supreme Court Decisions Support a Look-Through Presumption.
The Supreme Court’s decisions in Ylst, 501 U.S. 797, 111 S.Ct. 2590, and Moore, 562 U.S. 115, 131 S.Ct. 733, inform us why federal habeas courts should apply a look-through presumption when deciding whether a state appellate court’s summary decision is entitled to deference under § 2254. Together these cases demonstrate that it is appropriate for federal courts to presume that a state appellate court’s summary decision indicates agreement with the lower court’s reasons for rejecting the petitioner’s habeas claim on the merits.
a. Ylst v. Nunnemaker
The Supreme Court first recognized the look-through presumption in Ylst, where it treated a state appellate court’s summary decision as adopting the grounds in the last reasoned decision that rejected the petitioner’s habeas claim. In Ylst, a California inmate argued on direct appeal that the prosecution introduced evidence that was inadmissible under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Ylst, 501 U.S. at 799, 111 S.Ct. 2590. The California Court of Appeal affirmed, explaining that under a state procedural rule the Miranda claim could not be raised for the first time on appeal. Id. The inmate petitioned, in turn, a California trial court, the California Court of Appeal, and the California Supreme Court for collateral relief. Each court summarily denied relief. Id. at 800, 111 S.Ct. 2590. The inmate then sought a writ of habeas corpus in federal district court. The Ninth Circuit granted relief, holding that the California Supreme Court’s silent denial of collateral relief lifted the procedural bar imposed on direct review. Id. at 801, 111 S.Ct. 2590. The United States Supreme Court granted cer-tiorari to address “how federal courts in habeas proceedings are to determine whether an unexplained order (by which we mean an order whose text or accompanying opinion does not disclose the reason for the judgment) rests primarily on federal law.” Id. at 802, 111 S.Ct. 2590.
The Supreme Court held that federal courts should apply a look-through presumption to determine whether a state court’s unexplained order applied a procedural bar, meaning “[wjhere there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground.” Id. at 803, 111 S.Ct. 2590. This presumption may be rebutted with “strong evidence” that the later state court decision did not rely upon a procedural default, for example, where “a retroactive change *1256 in law had eliminated that ground as a basis of decision, and the court which issued the later unexplained order had directed extensive briefing limited to the merits of the federal claim.” Id. at 804, 111 S.Ct. 2590. '
Although the question before the Supreme Court concerned only whether the later summary decision rested on a procedural ground like the last reasoned decision, the Supreme Court justified the look-through presumption in broad terms:
The maxim is that silence implies consent, not the opposite — and courts generally behave accordingly, ■ affirming without further discussion when they agree, not when they disagree, with the reasons given below. The essence of unexplained orders is that they say nothing. We think that a presumption which gives them no effect — which simply “looks through” them to the last reasoned decision — most nearly reflects the role they are ordinarily intended to play.
Id. at 804, 111 S.Ct. 2590. Even if dicta, this broad reasoning suggests that a look-through presumption is appropriate not only to determine whether the state appellate court applied a procedural default, but also to identify the reasons why the state appellate court rejected the merits of the petitioner’s claims.[8]
The majority opinion reads Ylst as supporting only a presumption that “a summary affirmance rests on the same general ground — that is, a procedural ground or on the merits — as the judgment under review.” Maj. Op. at 1236. The majority relies on language in Ylst stating it would be “ ‘most improbable’ that an ‘unexplained order leaving in effect a decision ... that expressly relies upon procedural bar’ actually ‘rejected] that bar and decid[ed] the federal question.’ ” Id. (alterations in original) (quoting Ylst, 501 U.S. at 803-04, 111 S.Ct. 2590). Importantly, though, the next sentence in Ylst explains why such a conclusion would be improbable: because courts affirm “without further discussion when they agree, not when they disagree, with the reasons given below.” Ylst, 501 U.S. at 804, 111 S.Ct. 2590. Indeed, the Supreme Court recently has called into question the majority’s contention that Ylst’s look-through presumption means only that the state appellate court agreed with the same general ground as the lower court, not its precise reasoning. See Kernan v. Hinojosa, — U.S.-, 136 S.Ct. 1603, 194 L.Ed.2d 701 (2016) (holding that Ylst presumption was overcome when there was strong evidence that the California Supreme Court’s summary decision denying relief did not rest on precisely the same procedural ground as the California trial court’s decision, without considering whether the California Supreme Court agreed with the more general conclusion that some procedural ground barred review).
I acknowledge there was no holding in Ylst that federal habeas courts should presume that a state appellate court adopted a lower court’s reasons for rejecting a habeas petitioner’s claims on the merits. But the rationale in Ylst — that a summary affirmance indicates agreement with the lower court’s reasons absent strong evidence to the contrary — equally supports treating a state appellate court’s summary affirmance as adopting a lower court’s reasoning for rejecting the merits of the petitioner’s claims.[9]
*1257 b. Premo v. Moore and Harrington v. Richter
Moore and Richter were companion cases — argued on the same day and then decided on the same day in opinions authored by Justice Kennedy. The majority contends Richter dictates that we must review the Georgia Supreme Court’s summary decision using the unexplained-decision approach. But Richter did not address whether federal habeas courts should look through, because in Richter the California Supreme Court was the only state court to render a decision on the petitioner’s claims. Although Richter never addressed what mode federal habeas courts should use when there is both a summary state appellate court decision and a reasoned lower court decision, the majority opinion extends Richter’s unexplained-decision approach beyond the “subset of habeas petitions where there is no reasoned decision from any state court,” concluding that “[tjhere is no basis in [§ 2254(d)] or Richter for two divergent analytical modes — one when there is no previous reasoned decision below and another for when there is.”[10] Maj. Op. at 1236. I disagree.
The majority’s extension of RichtePs unexplained-decision approach to all summary state court decisions creates tension with the text and structure of § 2254(d). Congress structured § 2254(d) to provide for two distinct bases, set forth in separate subsections, for piercing AEDPA deference when a state court decision is (1) contrary to or an unreasonable application of clearly established federal law or (2) based on an unreasonable determination of the facts. See 28 U.S.C. § 2254(d)(1), (2); see also Rice v. Collins, 546 U.S. 333, 342, 126 S.Ct. 969, 163 L.Ed.2d 824 (2006) (“The question whether a state court errs in determining the facts is a different question from whether it errs in applying the law.”). If a federal habeas court limits its review to the summary decision from the Georgia Supreme Court, it may be able to determine that, based on the record and state of the law, the Georgia Supreme Court’s decision was unreasonable. But it will be unable to determine whether the decision was unreasonable because the state court’s analysis was (1) contrary to or an unreasonable application of law or (2) based on an unreasonable determination of the facts. Assume, for example, that a summary denial is issued in a case alleging ineffective assistance of counsel based on the failure to investigate potential mitigation evidence. The Georgia Supreme Court’s summary denial may have been based on an erroneous factual finding that counsel did investigate mitigation evidence or, alternatively, the denial may have been based on a correct determination of fact but a misapplication of Supreme Court precedent like Wiggins, 539 U.S. 510, 123 S.Ct. 2527, or Rompilla v. Beard, 545 U.S. 374, 125 S.Ct. 2456, 162 L.Ed.2d 360 *1258 (2005). The federal habeas court would have no way to know which it was.
I acknowledge that in Richter the Supreme Court implicitly accepted that federal habeas courts may blur the distinction between § 2254(d)(1) and (2) when reviewing a summary state court decision if there was no reasoned decision from any state court. But given the inherent tension between Richter and the structure of § 2254(d), Richters unexplained-decision approach should not be extended to apply when there is a reasoned decision from a state court.
Although Justice Kennedy did not address in Richter the approach that federal habeas courts should apply to review a summary state appellate court decision when there is a reasoned decision from a lower court, his opinion in Moore implicitly answered this question and supports limiting the unexplained-decision approach to cases where no reasoned state court decision exists. Put another way, Moore shows that the approach a federal habeas court takes to review a state appellate court’s summary decision turns on whether the lower state court rendered a reasoned decision. After all, in Moore, the Supreme Court looked through the state appellate court’s summary decision on the merits to whether the lower court had given reasons for denying the petitioner’s claim.
After pleading no contest to a felony murder charge, Moore sought a writ of habeas corpus in Oregon state trial court, alleging he had been denied effective assistance of counsel when his attorney failed to file a motion to suppress his confession. 562 U.S. at 119, 131 S.Ct. 733. The state habeas trial court held an evidentiary hearing and denied Moore’s habeas claim on the ground that it would have been fruitless for his counsel to file a motion to suppress in light of his other admissible confessions. Id. at 119-20, 131 S.Ct. 733. The Oregon Court of Appeals “affirmed without opinion.” Moore v. Palmateer, 174 Or.App. 321, 26 P.3d 191 (2001).[11]
Moore next filed in federal court a petition for a writ of habeas corpus claiming ineffective assistance of counsel. Moore, 562 U.S. at 120, 131 S.Ct. 733. After the district court denied relief and the Ninth Circuit reversed, the United States Supreme Court considered whether under § 2254(d) it was required to defer to the last state court decision on the merits, which was the summary decision of the Oregon Court of Appeals.[12] Although the Supreme Court never explicitly stated that it was looking through, its discussion of the content of the state trial court’s decision shows that it looked through the Oregon Court of Appeals’s summary decision. Indeed, the Supreme Court quoted directly from the state trial court’s decision, showing that it treated the appellate court’s summary denial as adopting that decision. See id. at 123, 131 S.Ct. 733 (“Finding that any ‘motion to suppress would have been fruitless,’ the state postconviction court concluded that Moore had not received ineffective assistance of counsel.” (quoting state trial court decision)). The Supreme Court’s focus on the state trial court’s reasoning demonstrates that when the Supreme Court reviews a state appellate court’s summary decision, it presumes that the summary decision adopted the lower court’s reasons for rejecting the claim.
In Moore, the state trial court’s rationale was indeterminate, though, because *1259 its decision “did not specify” whether it denied relief “because there was no deficient performance under Strickland or because Moore suffered no Strickland prejudice, or both.” Id. Because the trial court — and via the look-through presumption the Oregon Court of Appeals — inadequately identified the basis on which the petitioner’s claim failed and in effect rendered an unexplained decision, the Supreme Court ultimately applied the unexplained-decision approach to review the state court’s decision. Id. If, as the majority contends, the United States Supreme Court was not looking through, the Supreme Court would have considered only the Oregon Court of Appeals’s summary decision and would have had no reason to explain why the state trial court’s reasoning was indeterminate.
Again, I concede that neither Ylst nor Richter expressly answers the question of whether we should look through a state appellate court’s summary decision for purposes of deciding whether that decision is entitled to deference under § 2254(d). But when that very scenario came before the Supreme Court in Moore — authored by Justice Kennedy and issued on the very same day as his opinion in Richter — the Court implicitly applied a look-through presumption to try to ascertain the reasoning behind the Oregon Court of Appeals’s summary decision. Moore should guide our analysis here: it demonstrates that federal habeas courts should (1) presume that the state appellate court adopted the lower court’s reasoning, (2) identify the actual reasoning set forth in the lower court’s decision, and then (3) apply the reasoned-decision approach to determine whether those reasons are entitled to deference under § 2254(d).
c. Justice Ginsburg’s Special Concurrence in Hittson v. GDCP Explains that We Should Look Through.
After Moore, Justice Ginsburg wrote an opinion specially concurring in the denial of certiorari in Hittson to make clear that we should look through. Post -Richter, in Hittson, a Georgia death row inmate sought certiorari after our Court affirmed the denial of his federal habeas petition. Our Court refused to look through the Georgia Supreme Court’s summary decision denying a certificate of probable cause and instead reviewed the Georgia Supreme Court’s decision using the unexplained-decision approach. Hittson v. GDCP Warden, 759 F.3d 1210, 1232 n.25 (11th Cir. 2014), cert, denied sub nom. Hittson v. Chatman, — U.S.-, 135 S.Ct. 2126, 192 L.Ed.2d 887 (2015). Although the Supreme Court denied certiorari, Justice Ginsburg, in a concurrence joined by Justice Kagan, explained that Richter did not require federal habeas courts to “hypothesize reasons that might have supported” the Georgia Supreme Court’s unexplained order because there was a reasoned decision from a lower court, meaning the state court’s “reasons can be ascertained.” Hittson, 135 S.Ct. at 2127-28 (Ginsburg, J., concurring in denial of certiorari).[13] Of course, Justice Ginsburg’s concurrence is not binding on us. But it nevertheless should not be ignored: it both reflects the view of at least two justices on the question before us and correctly explains why we should look through here.
*1260 Importantly, Justice Ginsburg’s concurrence in Hittson was issued the same week that the Supreme Court in Brumfield affirmed that Richters, unexplained-decision approach applies only when there is no reasoned decision from any state court. These cases taken together show the majority is wrong to reject a look-through presumption and extend the unexplained-decision approach beyond the particular scenario that the Supreme Court faced in Richter — that is, when there is no reasoned decision from any state court rejecting the petitioner’s claim.[14]
d. The Majority Opinion Creates a Circuit Split.
The majority contends Richter dictates that we should not look through, but no other circuit has adopted its position. Instead, we are the only circuit — out of three to confront the issue — to hold that federal habeas courts should not look through to find the reasons a state appellate court denied the petitioner’s claims on the merits and should instead apply the unexplained-decision approach whenever a state court renders a summary decision, even when there is a reasoned decision from a lower court. See Grueninger v. Dir., Va. Dep’t of Corr., 813 F.3d 517, 526 (4th Cir. 2016) (“[W]e may assume that the Supreme Court of Virginia has endorsed the reasoning of the Circuit Court in denying Grueninger’s claim, and it is that reasoning that we are to evaluate against the deferential standards of § 2254(d).”); Cannedy v. Adams, 706 F.3d 1148, 1159 (9th Cir. 2013) (explaining that “Richter does not change our practice of ‘looking through’ summary denials to the last reasoned decision — whether those denials are on the merits or denials of discretionary review” and then applying the reasoned-decision approach (footnote omitted)).[15]
The majority opinion provides no good reason for creating a circuit split. Its attack on the reasoning of the Fourth and Ninth Circuits is based on its flawed assumption that the unexplained-decision approach applies to all state court summary decisions, even where there is a reasoned decision from a lower state court. But, as explained above, Richter does not address whether federal habeas court should look through, and the majority opinion ignores that the Supreme Court in Moore implicitly looked through.
2. Principles of Federalism and Comity Support a Look-Through Presumption.
Even if the Supreme Court had not recognized that federal habeas courts should look through a state appellate court’s summary decision when reviewing that decision under § 2254(d), we should adopt a look-through presumption because it best honors principles of federalism and comity. The majority and I agree that principles of federalism and comity should guide our *1261 analysis. We disagree, however, about how to apply these principles here. The majority believes these principles compel rejection of a look-through rule, but I believe these principles lead inescapably to the conclusion that federal habeas courts should treat a state appellate court’s summary decision as adopting the reasons given by the lower court for denying a petitioner’s claims on the merits.
I conclude that adopting a look-through presumption best serves principles of federalism and comity for four reasons. First, although the Georgia Supreme Court has never stated explicitly that it agrees with the superior court’s reasons for rejecting a petitioner’s claims when it renders a summary decision, there is strong support for the inference in Georgia procedure and the Georgia Supreme Court’s practices.
Second, although principles of federalism and comity prohibit a federal habeas court from forcing a state court to set forth reasons why it rejected a petitioner’s claim, contrary to the majority’s contention looking through imposes no opinion-writing standard. This is because a state appellate court can overcome the look-through presumption by something as simple as issuing a one-sentence summary decision stating that it disagrees with the lower court’s reasoning but agrees that the petitioner is not entitled to relief.
Third, looking through allows federal ha-beas courts to respect and give effect to the different ways that states have chosen to structure their collateral review systems. More specifically, looking through allows federal habeas courts to treat a summary state appellate court decision that is the product of a state collateral review system in which no state court has rendered a reasoned decision differently from a summary state appellate court decision that is the product of a state collateral review system in which a lower court has rendered a reasoned decision.
Fourth, I disagree with the majority’s argument that looking through is inappropriate because federal appellate courts do not treat their summary decisions as adopting the reasoning of lower courts. Federal practice should not dictate what a state appellate court’s summary decision means, particularly where, as here, there is evidence that the Georgia Supreme Court implicitly adopted the lower court’s reasoning.
a. Looking Through Accurately Captures What the Georgia Supreme Court Intends its Summary Decisions to Mean.
On the most basic level, the majority opinion’s refusal to look through the Georgia Supreme Court’s summary denial of an application for a certificate of probable cause offends principles of federalism because it results in federal courts ignoring the superior court’s reasoned decision despite evidence that the Georgia Supreme Court implicitly adopted that reasoning. AEDPA leaves “primary responsibility with the state courts” for adjudicating ha-beas claims. Pinholster, 563 U.S. at 182, 131 S.Ct. 1388. But the majority opinion impinges this responsibility by transforming the superior court’s reasoned decision into a nullity, upsetting AEDPA’s careful balance between the state and federal systems.
The majority opinion treats the superior court’s decision as a nullity because the Georgia Supreme Court subsequently issued a decision denying an application for a certificate of probable cause, albeit in a summary opinion. In my view, Georgia’s statutory procedures as well as the Georgia Supreme Court’s practices support the conclusion that the Georgia Supreme Court’s silent denial of an application for a certificate of probable cause indicates agreement with and adoption of the superior court’s reasoning. This evidence comes *1262 in three forms: (1) the structure of Georgia’s collateral review system; (2) the Georgia Supreme Court’s practice of issuing reasoned denials of certificates of probable cause when it agrees with the superior court’s decision to deny relief but disagrees with the superior court’s reasoning; and (3) the Georgia Supreme Court’s continued use of summary denials of certificates of probable cause after the United States Supreme Court on direct review implicitly treated the decision as adopting the superior court’s reasoning.
First, the way in which Georgia has set up its habeas system suggests that the Georgia Supreme Court’s summary denial indicates agreement with the superior court’s reasoning. Georgia law requires a petitioner to seek habeas relief in a superi- or court in the first instance, O.C.G.A. § 9-14-43, and mandates that the superior court issue a reasoned decision including written findings of fact and conclusions of law, id. § 9-14-49. The State limits the scope of appellate review, requiring petitioners to apply for a certificate of probable cause to appeal, id. § 9-14-52, and allowing the Georgia Supreme Court to issue a certificate of probable cause only when the petitioner has demonstrated arguable merit. See Foster, 136 S.Ct. at 1746 n.2. Although the Georgia Supreme Court may deny an application for a certificate of probable cause in a summary decision, the superior court must first render a reasoned decision.[16] See O.C.G.A. § 9-14-49.
Second, the Georgia Supreme Court’s practice of issuing a reasoned denial of an application for a certificate of probable cause when it disagrees with the superior court’s reasoning but agrees with the result further supports the conclusion that the Georgia Supreme Court’s summary denial indicates agreement with the superior court’s reasoning. Although the Georgia Supreme Court routinely denies applications for certificates of probable cause in summary decisions, it has sometimes provided reasons why it denied an application when it agreed with the result the superior court reached — that is, the denial of relief — but disagreed with the superior court’s reasons. For example, the Georgia Supreme Court explained in Tollette v. Upton that it denied an application because, although the superior court applied the incorrect legal standard to evaluate prejudice, under the correct standard the petitioner failed to demonstrate that his claim had arguable merit. Tollette v. Upton, No. S13E1348 (Ga. Mar. 28, 2014); see also Rivera v. Humphrey, No. S13E0063 (Ga. Sept. 9, 2013) (denying application for certificate of probable cause even though superior court applied the wrong standard because “after independently applying the correct legal principle to the facts as found by the [superior] court, ... we conclude that the Petitioner’s claim is without arguable merit”); Pace v. Schofield, No. S08E049 (Ga. Jan. 12, 2009) (concluding that superior court’s prejudice analysis was erroneous but denying application because “there is no arguable merit to the Petitioner’s ineffective assistance of counsel claims”).
*1263 Third, as I explain in greater detail in the next subsection, the United States Supreme Court has on direct review treated the Georgia Supreme Court’s summary denial of an application for a certificate of probable cause as adopting the superior court’s reasoning.[17] Despite knowing that, at least on direct review, the United States Supreme Court will treat its summary denial as adopting the superior court’s reasoning, the Georgia Supreme Court has continued to deny applications for certificates of probable cause in summary orders. The continued practice shows that the Georgia Supreme Court intends its silence to indicate consent. Put another way, the Georgia Supreme Court’s practice supports the conclusion that it “generally ... afBrm[s] without further discussion when [it] agree[s], not when [it] disagree[s], with the reasons given below.” Ylst, 501 U.S. at 804, 111 S.Ct. 2590.
I agree with the majority that under AEDPA we must give state court decisions “the benefit of the doubt.” Maj. Op. at 1239 (quoting Renico v. Lett, 559 U.S. 766, 773, 130 S.Ct. 1855, 176 L.Ed.2d 678 (2010)). But I do not believe that this principle is in any way inconsistent with the presumption that the Georgia Supreme Court agrees with the superior court’s reasoning when it issues a summary denial of a certificate of probable cause.
b. Looking Through Imposes No Opinion-Writing Standard.
The majority attacks the look-through presumption as inconsistent with federalism because it “impose[s] opinion-writing standards on state appellate courts.” Id. at 1238. It certainly is true that the Supreme Court has expressed concern about federal habeas courts using AEDPA to impose opinion-writing standards on state courts. See Johnson v. Williams, — U.S. -, 133 S.Ct. 1088, 1095, 185 L.Ed.2d 105 (2013). But I disagree that looking through would pressure the Georgia Supreme Court to “provide a statement of reasons” when it disagrees with the superior court’s reasons for denying relief to negate a look-through presumption. Maj. Op. at 1238. The Georgia Supreme Court could simply issue a one-line order denying an application for a certificate of probable cause that indicates agreement with the result the superior court reached but not the lower court’s reasons for rejecting the petitioner’s claim.[18] A federal habeas court would not look through that decision because the presumption that the Georgia Supreme Court adopted the superior court’s reason *1264 ing would be overcome, see Ylst, 501 U.S. at 804, 111 S.Ct. 2590, and the federal court would then review the Georgia Supreme Court’s decision under the unexplained-decision approach.
But even if the Georgia Supreme Court chooses to explain why it denied the petitioner’s application, I cannot agree that looking through creates an undue opinion-writing burden because on direct review under 28 U.S.C. § 1257(a) the United States Supreme Court already presumes that the Georgia Supreme Court’s summary decisions adopt the reasoning in the lower court’s decision. As a result, the Georgia Supreme Court presently has an incentive to state when it disagrees with the superior court’s rationale regardless of whether federal habeas courts look through.[19] See Foster, — U.S. -, 136 S.Ct. 1737, 195 L.Ed.2d 1; Sears v. Upton, 561 U.S. 945, 130 S.Ct. 3259, 177 L.Ed.2d 1025 (2010).
In Sears, on direct review under § 1257(a), the United States Supreme Court looked through the Georgia Supreme Court’s summary decision denying an application for a certificate of probable cause, presuming that it denied the application for the reasons set forth in the superior court’s decision. See, e.g., Sears, 561 U.S. at 953-54, 130 S.Ct. 3259 (“There are two errors in the state court’s analysis of Sears’ Sixth Amendment claim.”). Because the superior court — and thus, implicitly the Georgia Supreme Court — improperly applied the prejudice prong in its analysis of Sears’s ineffective assistance of counsel claim, the United States Supreme Court vacated and remanded for the state court to apply the proper standard. Id. at 946, 130 S.Ct. 3259.[20]
And again in Foster, the Supreme Court on direct review looked through the Georgia Supreme Court’s summary denial of a certificate of probable cause to the superi- or court’s reasons for denying the petitioner’s claim. A threshold issue in Foster was whether the Georgia Supreme Court’s denial of a certifícate of probable cause rested on federal or state law grounds. Foster, 136 S.Ct. at 1746 n.3. Even though it was reviewing the Georgia Supreme Court’s decision, the United States Supreme Court referred to the superior court as “the state habeas court” and looked through to the superior court’s analysis. Id. at 1745-46. The dissent in Foster criticized the majority for “attributing ... [the] Superior Court’s reasoning to the Supreme Court of Georgia,” warning that the majority had “impose[d] an opinion-writing requirement on the States’ highest courts” by forcing them to write “reasoned opinions” to avoid reversal on direct review. Id. at 1764-65 (Thomas, J., dissenting). Nevertheless, the majority in Foster looked through, implicitly rejecting the dissent’s argument that *1265 the Court was imposing a forbidden opinion-writing burden.
Since Sears, then, the Georgia Supreme Court has been on notice that if it summarily denies an application for a certificate of probable cause, the United States Supreme Court — at least on direct review under § 1257(a) — will treat its summary decision as implicitly adopting the superior court’s reasoning and will vacate its judgment if the superior court’s reasoning is flawed. Accordingly, I fail to see how looking through under § 2254(d) would impose an improper opinion-writing standard.
c. Looking Through Respects Differences in How States Have Structured Their Habeas Systems.
The majority opinion requires federal habeas courts to apply the unexplained-decision approach to review all summary state court decisions, regardless of whether the state habeas system requires a reasoned decision from a lower court. But the majority opinion’s approach violates the principles of comity and federalism that underlie AEDPA because it fails to respect differences in how the states have chosen to structure their systems. See Younger v. Harris, 401 U.S. 37, 44, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) (recognizing that comity requires “a proper respect for state functions” and “a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways”). Proper respect requires federal habeas courts to treat summary state appellate decisions that are rendered after a lower court issued a reasoned decision differently from summary state appellate court decisions when there is no reasoned decision from a lower court.
To illustrate why such summary decisions should not be treated identically, I compare the California and Georgia state collateral review systems. California, like Georgia, has structured its collateral review procedures to permit its state supreme court to issue a summary decision rejecting a petitioner’s claims on the merits, but its system for reviewing habeas claims otherwise bears little resemblance to Georgia’s. California law allows a petitioner to seek relief in the California Supreme Court in the first instance without requiring the California Supreme Court to issue a reasoned decision. See Richter, 562 U.S. at 96, 131 S.Ct. 770. Without a previous reasoned decision from any California court, it is impossible for a federal habeas court to attribute any reasons to the California Supreme Court’s summary decision.
But, as I described above, collateral review in Georgia is markedly different. Georgia guarantees petitioners at least one reasoned decision addressing their claims. Thus, there is good reason to infer that the Georgia Supreme Court intends its summary decision to adopt the lower court’s reasoning. Looking through allows federal habeas courts to give meaning and effect to these differences in how Georgia and Florida have chosen to structure their state habeas systems.
At bottom, the majority takes the position that federal habeas courts must review all summary state court decisions in one uniform way. Although the majority exalts the importance of uniformity, the majority also would have federal habeas courts draw simultaneous, inconsistent conclusions about what a single state appellate court’s summary decision means. Petitioners frequently raise more than one claim in a state habeas petition, and state habeas trial courts may issue a single order addressing all of the claims. As in this case, the state habeas trial court may conclude that some of the petitioner’s claims are procedurally defaulted and others fail on the merits. Or the state court may *1266 decide that a claim is procedurally defaulted and, in the alternative, fails on the merits. When a state appellate court issues a summary decision rejecting the petitioner’s appeal, the majority would have the federal habeas court draw inconsistent conclusions about what the state appellate court’s silence means. With respect to the procedurally defaulted claims, the majority opinion would have a federal court treat the state appellate court’s silence as indicating agreement with the trial court’s decision to deny the claim on state law procedural grounds. ,See Ylst, 501 U.S. at 804, 111 S.Ct. 2590. At the same time, with respect to the claims the state trial court addressed on the merits, the majority opinion would have the federal court reject the conclusion that the state appellate court through its silence adopted the lower court’s reasoning.
I am concerned that by embracing a look-through presumption for purposes of identifying whether the state appellate court applied a procedural default but rejecting it for purposes of identifying the grounds on which the state appellate court rejected the petitioner’s claims, the majority opinion fails “to afford state courts due respect” and offends principles of federalism. Woods v. Donald, — U.S.-, 135 S.Ct. 1372, 1376, 191 L.Ed.2d 464 (2015). Indeed, the majority offers no credible explanation why a federal habeas court can draw simultaneous inconsistent conclusions about the meaning of a state appellate court’s summary decision. In the absence of any explanation, it could appear that federal habeas courts are reading summary state court decisions so as to impose the most onerous burden upon ha-beas petitioners — that is, looking through to preserve procedural defaults (and thus bar federal habeas courts from reviewing the merits of the petitioner’s claims) but refusing to look through so that habeas petitioners must meet the more demanding inquiry under the unexplained-decision approach when the summary decision was on the merits.
d. Deferring to How Federal Appellate Courts Understand Their Summary Decisions Violates Federalism Principles.
The majority contends that federal ha-beas courts should not adopt a look-through presumption because when federal appellate courts summarily affirm decisions from lower courts, they do not necessarily adopt the lower court’s reasoning. The majority assumes that a state appellate court’s summary decision carries the same meaning on federal habeas review that federal appellate courts assign to their own summary decisions. This position is unprincipled and inconsistent with federalism.
It is true that the United States Supreme Court and federal appellate courts have said that their summary affirmances do not adopt the reasoning of the lower court. The Supreme Court has explained, for example, that only what “was essential to sustain” the lower court’s judgment may be read into its summary decisions. Anderson v. Celebrezze, 460 U.S. 780, 784 n.5, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983); see Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm’n, 461 U.S. 190, 212 n.24, 103 S.Ct. 1713, 75 L.Ed.2d 752 (1983). This is because the Supreme Court, like all federal appellate courts, may affirm a lower court decision for any reason. As such, the meaning assigned to a federal appellate court’s summary decision is limited to “the precise issues presented and necessarily decided” in the summary decision. Anderson, 460 U.S. at 784 n.5, 103 S.Ct. 1564 (internal quotation marks omitted).
Because federal review of state habeas decisions is unique, however, it strikes me as inappropriate that the federal courts’ practice in another context should dictate what a state appellate court’s summary *1267 decision means in that state’s system. Indeed, the majority opinion cites no authority to support its assumption that federal practice should control. The majority’s assumption that federal appellate practice should control what we understand a state appellate court’s summary decision to mean is flawed for at least two reasons: (1) it is inconsistent with Ylst, in which the Supreme Court did not look to federal practice to understand the meaning of a state appellate court’s summary affirmance and (2) at least with respect to Georgia, it offends federalism and comity given the evidence that the Georgia Supreme Court implicitly adopts a superior court’s reasoning when it summary denies an application for a certifícate of probable cause.
First, in Ylst, despite suggesting that a state appellate court’s summary orders “are not meant to convey anything as to the reason for the decision,” the Supreme Court treated a state appellate court’s summary decision as adopting the grounds in the last reasoned state court decision. Ylst, 501 U.S. at 803-04, 111 S.Ct. 2590 (emphasis in original). The Supreme Court thus ascribed far greater meaning to a state court’s summary affirmance than federal courts give their own summary af-firmances. Significantly, though, the Supreme Court found it unnecessary to mention that it was treating a summary state appellate court decision differently from the way federal appellate courts treat their, own summary decisions. To me this demonstrates that we are not constrained by how federal courts treat their own summary decisions when interpreting what a state appellate court’s summary decision means.[21]
Second, as I explained above, decisions from the Georgia Supreme Court demonstrate that it issues summary denials when it agrees, not disagrees, with the superior court’s reasons for denying the petitioner’s claims. The majority’s reliance on how federal courts understand their summary af-firmances and corresponding refusal to consider what Georgia’s collateral review system and the Georgia Supreme Court’s practices tell us about the meaning of its summary decisions fail to afford due respect to principles of comity and .federalism. See Thompson v. Bell, 580 F.3d 423, 442 (6th Cir. 2009) (recognizing it would do a disservice to comity to ignore the highest court of a state’s views on its laws).[22]1 find *1268 it is curious that the majority criticizes the look-through presumption as contradicting federalism principles when its position rests on the unsupported assumption that summary decisions from state appellate courts must carry the same meaning that federal appellate courts assign to their own summary decisions.[23]
III. CONCLUSION
I fear that the majority opinion’s application of the unexplained-decision approach to review a summary decision of the Georgia Supreme Court will deprive petitioners of federal habeas relief, eroding the guarantees of the Great Writ. I cannot agree that to pierce AEDPA deference a habeas petitioner must show that the Georgia Supreme Court’s denial of an application for a certificate of probable cause was unreasonable. I believe that federal habeas courts should presume that the state appellate court’s summary decision under review adopted the lower court’s reasons for rejecting the petitioner’s claims. When the presumption has not been overcome by strong evidence, a federal habeas court should review whether the arguments or theories in the superior court’s decision are entitled to deference under the reasoned-decision approach.
The majority’s decision today requires federal habeas courts under § 2254(d) to defer to a summary decision of the Georgia Supreme Court so long as a federal court can conjure up any ground upon which relief reasonably could have been denied, even when the superior court’s reasoning was contrary to clearly established law. To reach this result, the majority ignores United States Supreme Court cases that direct us to presume that the Georgia Supreme Court silently adopted the superior court’s reasoning. And the majority ignores the evidence that the Georgia Supreme Court intends and understands its summary denials to mean that it agrees with the superior court’s reasoning. Instead, the majority relies on the unsupported assumption that federal cases addressing the meaning federal appellate courts assign their summary decisions dictate what the Georgia Supreme Court’s summary decisions mean. Rather than working the careful balance between the state and federal system that AEDPA and our Constitution require, the majority *1269 opinion does the very opposite. I therefore dissent.

. As the district court explained, just four months before the start of trial, the two lawyers who served as Mr. Wilson’s trial counsel had not begun their mitigation investigation or even decided who would be responsible for the mitigation investigation. Through trial, each attorney believed the other was primarily responsible for developing the mitigation case. As a result, trial counsel never interviewed any background witnesses. Although there were red flags about Mr. Wilson’s background in documentary evidence, counsel failed to expand their investigation beyond the records.

. Since February 2015, Georgia has executed nine individuals. Eight of them applied to the Georgia Supreme Court for a certificate of probable cause after the state habeas trial court denied relief. The Georgia Supreme Court denied each application in a summary order.

. The Supreme Court has applied the reasoned-decision approach many times. See, e.g., Porter v. McCollum, 558 U.S. 30, 42, 130 S.Ct. 447, 175 L.Ed.2d 398 (2009) (holding that state court unreasonably applied clearly established law because in its analysis the court "either did not consider or unreasonably discounted the mitigation evidence adduced in the postconviction hearing”); Panetti v. Quarterman, 551 U.S. 930, 952-53, 127 S.Ct. 2842, 168 L.Ed.2d 662 (2007) (explaining that state court’s determination that it had provided petitioner with adequate procedures to resolve his competency claim unreasonably applied clearly established federal law); see *1252 also Early v. Packer, 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002) (explaining that no deference is required under § 2254 when "the reasoning" in a state court decision is contrary to clearly established law). So too have we. See Evans v. Sec’y Dep’t of Corr., 703 F.3d 1316, 1328 (11th Cir. 2013) (en banc) (Pryor, William, J.) (explaining that under AEDPA a federal habeas court must identify "the arguments supporting the decision” of the Florida Supreme Court and defer if " 'it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme Court]'" (alteration in original)).

. Each year more than 3,400 original petitions for a writ of habeas corpus are filed directly with the California Supreme Court, making up over one-third of that court’s caseload. See Richter, 562 U.S. at 99, 131 S.Ct. 770.

. To be clear, this circuit split — about whether Richter required federal habeas courts to review the result reached, not the reasoning, of a state court — is distinct from the circuit split created by the majority opinion in this ease, which concerns whether a federal habe-as court should presume that a state appellate court’s summary decision adopted a lower court's reasons for rejecting the petitioner’s claim.

. The majority's position that in Brumfield the Supreme Court “had no opportunity to apply or qualify Richter” simply cannot be squared with the Supreme Court's decision. Maj. Op. at 1242. In Brumfield the Supreme Court clarified that federal habeas courts should not use the unexplained-decision approach announced in Richter when there is a reasoned state court decision.

. I note that the majority opinion is utterly inconsistent with our decision in Hammond v. Hall, 586 F.3d 1289 (11th Cir. 2009), in which we reviewed both the trial court's decision and the Georgia Supreme Court's decision under § 2254(d). In Hammond, the petitioner brought an ineffective assistance of counsel claim in Georgia superior court. The superior court denied the claim on the basis that the petitioner failed to establish deficient performance, without addressing prejudice. 586 F.3d at 1330. The petitioner then sought to appeal to the Georgia Supreme Court. After granting a certificate of probable cause, the Georgia Supreme Court affirmed the superior court’s decision but held that the petitioner failed to show prejudice and explicitly declined to address deficient performance. Id. Reviewing the petitioner's federal habeas petition, we held that “where a state trial court rejects a claim on one prong of the ineffective assistance of counsel test and the state supreme court, without disapproving that holding, affirms on the other prong,” the petition *1255 er must show both reasons for rejecting the claim are not entitled to deference under § 2254(d). Id. at 1332.
Our decision in Hammond can be understood in one of two ways: either (1) federal courts may review more than one state court decision when applying § 2254(d), or (2) federal courts may presume that a state appellate court by its silence adopted a lower court’s reasoning. Either way the majority has countermanded Hammond. First, the majority rejects the position that federal habeas courts may consider more than one state court decision under § 2254(d). See Maj. Op. at 1232 (directing that under § 2254(d), we only "review one decision”). Second, the majority forbids federal habeas courts from presuming that a state appellate court silently adopted the reasoning of a lower court. See id. at 1232. Although the en banc court is not bound by prior panel precedent, I am troubled that the majority opinion never acknowledges its conflict with Hammond or offers an *1256 explanation for departing from this precedent.

. We must, of course, bear in mind that “there is dicta and then there is dicta, and then there is Supreme Court dicta.” Schwab v. Crosby, 451 F.3d 1308, 1325 (11th Cir. 2006).

. I note that prior to Richter, when reviewing state appellate court decisions for purposes of § 2254(d), we extended Ylst beyond the procedural default context and presumed that a state appellate court's summary affirmance *1257 adopted the lower court's reasons for rejecting the petitioner's claims on the merits. See McGahee v. Ala. Dep’t of Corr., 560 F.3d 1252, 1261 n.12 (11th Cir. 2009); Putman v. Head, 268 F.3d 1223, 1232, 1242 (11th Cir. 2001) (looking through Georgia Supreme Court’s summary denial to superior court’s reasoning). We were not alone: other circuits similarly interpreted Ylst. See, e.g., Cannedy v. Adams, 706 F.3d 1148, 1158 (9th Cir. 2013) (explaining it was a "common practice of the federal courts to examine the last reasoned state decision to determine whether a state-court decision is ‘contrary to’ or an unreasonable application of’ clearly established federal law”).

. Nothing in § 2254(d) or the case law interpreting it supports the majority’s position that all summary state appellate court decisions must be reviewed in the same way, regardless of whether there was a reasoned decision from a lower court. Indeed, the majority’s emphasis on the need for a uniform approach ignores that the Supreme Court has already applied two distinct analytical modes for applying § 2254(d)’s standard.

. The Oregon Supreme Court then denied the petitioner’s request for discretionary (cer-tiorari-like) review. Moore v. Palmateer, 332 Or. 430, 30 P.3d 1184 (2001).

. Under Oregon law, the Oregon Court of Appeals's summary affirmance was a decision on the merits. See Or. Stat. § 34.710 (providing petitioner the right to appeal a trial court judgment refusing to allow a habeas writ).

. Although Justice Ginsburg disagreed with our Court's rejection of the look-through presumption, she ultimately concurred in the denial of Mr. Hittson's petition because the state trial court's reasoning was entitled to deference under § 2254(d). See Hittson, 135 S.Ct. at 2128 (“I am convinced that the Eleventh Circuit would have reached the same conclusion had it properly applied Ylst.”).

. Indeed, the combination of the Hittson concurrence and Brumfield caused the Georgia Attorney General to change his position in this case because ”[i]t simply does not seem to be the better choice to refuse to look at the last reasons given by a state court in deciding a claim and [Richter] provides no language suggesting that the last reasoned opinion should not be looked to for federal habeas review.” Appellee Br. at 18. Although this concession certainly does not bind us, it is telling that Georgia's Attorney General changed his position even though the result would be that petitioners face a lighter, and the state a correspondingly heavier, burden on federal review of summary denials of ha-beas relief.

. In addition, at least one other circuit has in dicta suggested that it would look through a state appellate court’s summary decision on the merits to the last reasoned opinion. See Woodfox v. Cain, 772 F.3d 358, 359 (5th Cir. 2014) ("Under AEDPA, 'we review the last reasoned state court decision.’ ”).

. Other states, like Georgia, have adopted systems that permit their appellate courts to resolve appeals from denials of habeas relief in summary decisions on the merits. In Florida, habeas petitioners not sentenced to the death penalty may appeal state habeas trial court decisions to Florida's intermediate appellate courts as a matter of right. See Fla. R. Crim. P. 3.850(k); Johnson v. Wainwright, 230 So.2d 700, 701-02 (Fla. Dist. Ct. App. 1970). And Florida’s intermediate appellate courts may summarily affirm the denial of relief. See, e.g., Shelton v. Sec'y Dep’t of Corr., 691 F.3d 1348, 1353 (11th Cir. 2012). Likewise, Oregon appellate courts may issue summary decisions on the merits when reviewing lower court decisions denying habeas relief. See Moore v. Palmateer, 174 Or.App. 321, 26 P.3d 191 (2001).

. Certainly, the same principles do not always apply on the Supreme Court’s direct review of state habeas decisions under 28 U.S.C. § 1257(a) and federal habeas review of state court decisions under AEDPA. But the majority presents no compelling reason why the meaning of a Georgia Supreme Court decision should vary between the two contexts. Despite the differences between direct and collateral review, the Supreme Court has applied principles from direct review cases to federal habeas cases when an issue is "common to both direct and habeas review." Harris v. Reed, 489 U.S. 255, 263, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989). Moreover, the majority itself recognizes that principles from direct review cases can apply to federal habeas review under AEDPA. See Maj. Op. at 1233 (looking to Foster, a direct review case addressing whether the summary denial of a certificate of probable cause is a decision on the merits subject to review on a writ of certiorari, to understand whether the same decision also qualifies as an adjudication on the merits under § 2254(d)).

. The majority contends that because the Georgia Supreme Court would have to issue this one-sentence order to overcome the look-through presumption, looking through would impose an opinion-writing standard. I suppose that is literally correct, but any burden would be minimal, limited to a form sentence that could be used with little more trouble than the sentence that the Georgia Supreme Court most frequently uses, "it is ordered that [the application] be hereby denied.”

. This statutory provision provides that “[f|i-nal judgments ... rendered by the highest court of a State in which a decision could be had [] may be reviewed by the Supreme Court.” 28 U.S.C. § 1257(a).

. Although the Supreme Court has stated that it “rarely” reviews under § 1257(a) state court decisions denying collateral relief, Lawrence v. Florida, 549 U.S. 327, 335, 127 S.Ct. 1079, 166 L.Ed.2d 924 (2007), as at least one Supreme Court justice has observed, recently the Supreme Court has reviewed such decisions under § 1257(a) more frequently. See Foster, 136 S.Ct. at 1760-61 (Alito, J., concurring) (discussing trend of Supreme Court granting certiorari under § 1257(a) to review state court decisions denying postconviction relief). Indeed, just last term in at least four cases the Supreme Court granted review under § 1257(a) and reversed (or vacated) the state court decision denying collateral relief. See Williams v. Pennsylvania, - U.S. -, 136 S.Ct. 1899, 195 L.Ed.2d 132 (2016); Foster, 136 S.Ct. at 1755; Wearry v. Cain,-U.S. -, 136 S.Ct. 1002, 1008, 194 L.Ed.2d 78 (2016); Montgomery v. Louisiana, - U.S. -, 136 S.Ct. 718, 193 L.Ed.2d 599 (2016).

. The majority tries to sidestep this issue by contending that under Ylst a summary affir-mance means only that the state appellate court’s decision rested "on the same general ground — that is, a procedural ground or on the merits — as the judgment under review.” Maj. Op. at 1236. The problem is that Ylst went further than treating a summary affir-mance as simply indicating an agreement with the general ground reached by the lower court. The Supreme Court explained that a summary affirmance indicates agreement with the lower court's reasons: "silence implies consent ... and courts generally behave accordingly, affirming without further discussion when they agree ... with the reasons given below.” Ylst, 501 U.S. at 804, 111 S.Ct. 2590; see also Hinojosa, 136 S.Ct. at 1606 (holding Ylst presumption was overcome when there was strong evidence that state appellate court did not agree with specific reason given by lower court).

. The majority points out that Justice Ginsburg concurred in the denial of certiorari in Hittson because she agreed with the result reached by our Court but not the reasoning, concluding that the Georgia Supreme Court likewise may deny an application for a certificate of probable cause in a summary order even though it disagrees with the lower court’s reasoning. Implicit in this argument is the idea that federal habeas courts should look to how the United States Supreme Court applies its discretionary standard for reviewing certiorari petitions, see Supreme Ct. R. 10 ("Review on a writ of certiorari is not a matter of right, but of judicial discretion.”), to understand what the Georgia Supreme Court’s summary denial of a certificate of probable cause means, even though the Georgia Supreme Court’s decision is on the merits. I fail to see why the fact that the United States Supreme Court may in its discretion deny a certiorari petition for any reason indicates *1268 that the Georgia Supreme Court summarily denies applications for certificates of probable cause for reasons other than those given by the court below, especially in light of the Georgia Supreme Court's practice of issuing reasoned decisions when it denies relief for a reason other than the one stated by the superior court.

. The majority also suggests that a federal habeas court that looks through violates principles of federalism because it improperly "review[s] the entire process by which a prisoner’s federal claim was adjudicated” instead of determining whether the last state-court decision is entitled to deference. Maj. Op. at 1240. This suggestion relies on the assertion that looking through requires a federal habeas court to review the entire state court proceedings because the federal court would have to consider the lower state court decision and briefing before the state appellate court to determine whether the look-through presumption is overcome. But I see no problem because a federal habeas court would look to briefing before the state appellate court only as part of the threshold inquiry to identify the content of the state court decision. The Supreme Court has recognized that a federal habeas court reviewing a state court decision has a "duty ... to determine the scope of the relevant state court judgment.” Coleman v. Thompson, 501 U.S. 722, 739, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). Importantly, the federal habeas court would not use the state court briefing to determine whether the state appellate court's summary decision, which implicitly adopted the arguments or theories set forth in the lower court's reasoned decision, was entitled to deference.